Mr. Rosenberg. Thank you, Your Honor, and may it please the Court. The purpose of Section 1782 is to assist foreign tribunals by providing them with evidence from the United States. The reason Juraeus is seeking a very limited modification of a protective order in this case is so that it can meaningfully present evidence that this Court ordered in the first appeal to several foreign tribunals. I'd like to take just a few seconds to read two sentences from the proposed orders which were in each of the proposed orders given to the District Court. So Juraeus asked to be excluded from certain protections in the protective orders and said, Juraeus shall use all mechanisms available in the foreign forums to protect the cited documents from public disclosure when submitting them to such foreign courts, tribunals, and agencies. Biomet, Eskim, and its counsel shall maintain their copies of the cited documents as confidential and not disclose the cited documents to any unauthorized individual nor allow the cited documents to be disclosed to the public. That is precisely the relief that Juraeus was seeking. And the reason this was such critical relief is that Biomet was able to use the existence of the protective order as a mechanism, as leverage, to delay proceedings in many of these foreign forums. It is undisputed in the record that in Belgium the proceedings were delayed by 18 months or more, that in Norway the proceedings, there's still no trial date in Norway, and the proceedings have been delayed over two years, and in Denmark the proceedings were delayed over nine months. The purpose of the protective order is to protect- Mr. Rosenberg, hello. Hello, Your Honor. Hi. It seems to me that the issue of who ought to have control over the cited documents implicates substantive questions over whose trade secrets are in these documents. Is it your position that the German court's decision is binding on that point here in the United States? Your Honor, we don't need the German decision in our review to define that. I'm asking you- Well, as a matter of principle, we believe the decision should be binding, but we don't think this court needs to reach that issue, because- So you think it should be? It should be binding? Yeah. Yeah. Whatever they do in Germany, or Uganda, or France, or Guatemala should be binding on this court. Is that what you're saying? No. And, Your Honor, perhaps I've misstepped here. Our position, and we've taken this position in other courts in the U.S., is that in the very unique circumstances of this case, the German judgment should be binding. But that is not an issue that is implicated in this case. And the reason- Well, of course- What I was just going to say, Your Honor, is the reason is that for confidentiality purposes, the courts don't need to make a merits determination. All we need for confidentiality purposes is a prima facie showing of the confidentiality interests. And in our view, number one, the documents themselves, several of which, and I would direct the court to Appendix 250, 253, and 258, three of those documents clearly say on their face that they contain Horaeus' information. And secondly, our view is the German judgment is at least prima facie evidence of a confidentiality interest that Horaeus has. But the court, in our view, doesn't need- But these documents contain sensitive, confidential information. Why does the German court's citation of this information shift the burden from you, from Horaeus, to Baye Metternichem? If a U.S. court cited this sort of trade secret information, honestly, I don't think this would render the information presumptively public. It's not. But here's the principle, Your Honor. This court's decision in Baxter says that where, in that case, the public has an interest in knowing what the basis of a court decision is, there's a presumption of public disclosure. The way Baxter applies here is the audience that has the right to know are the foreign judges. Nobody is saying these documents should be publicly disclosed. Instead, we're saying the opposite. What we're saying is that the foreign judges should be able to get these documents and be able to look at them and not have this protective order interfere with their getting the documents. And so given that Baye Metternichem and Eschem are the companies that are opposing a regime that allows those German judges to freely get the documents, the burden, we believe, should be on them to show why. And it doesn't matter, ultimately, who owns the trade secrets. Nobody is suggesting that the documents be publicly disclosed. The point is, does Baye Met get a unilateral veto when Horaeus has proposed all available reasons, all available mechanisms to keep the documents confidential when we have at least a German judgment that these are Horaeus's trade secrets? Several of the documents say on their face this is Horaeus's information. And if Horaeus allows these documents to be disclosed publicly, they lose any trade secret protection. And so the real question here is... I'm sorry. I was not persuaded that Baye Met and Eschem were deliberately interfering with Horaeus's efforts to use the cited documents in the various enforcement proceedings. I understand, I know you disagree with Judge Miller's assessment, but it's really not at all clear to me why you think his finding was not only wrong, but clearly erroneous. I'm not getting it. So Your Honor, I think there are three errors on the merits that are actually legal errors that Judge Miller committed. The first is, as we said, applying the wrong burden, but be that as it may. The second error is that in the course of Judge Miller's analysis, he never even referenced paragraph 11 of the protective order. Paragraph 11 provides a specific mechanism for either party to challenge the way specific documents or particular procedures under the protective order have been instituted. And in failing to cite paragraph 11 in applying the four-factor test from the Murata case that the judge employed, that directly affects three of the factors, the nature of the protective order, foreseeability, and reliance. Paragraph 11 provides that the parties can do exactly what Horaeus is doing here, and Judge Miller entirely ignored that. And then with regard to the fourth factor, good cause... Look, Judge Miller didn't even think... He was very concerned as to whether he had the power to restrict their use of the cited documents. You know, as I understand it, these are their own documents. And parts of these documents may contain great secret information that, you know, belongs to Horaeus. It may, as the German court concluded, but I'm not sure that that would justify treating the documents themselves as belonging to Horaeus. And it seems more like a substantive determination as to who owns the information. And that, to me, at this point, but, you know, look, I have an open mind, I do. But that, to me, at this point, looks like a matter beyond the jurisdiction of the district court thought, which is charged only, only with overseeing discovery. You know, no case has been made for the notion that the German court determination on this point should be controlling in the United States. It's, you know... So, Your Honor, a couple of things here. The first is, and I think the most important, is when you look at the actual record, right, it is only Horaeus that has supported its argument that it has a confidentiality interest. Horaeus has submitted multiple declarations establishing an interest beyond the face of the documents themselves. Biomet and Eskim have submitted no evidence. Not a single declaration, nothing, supporting any confidentiality interest they have in these documents. And but for the information that on its face is Horaeus's, we argued in the district court that the other information that's in there is either not sensitive business information, is stale because it's old and relates to products no longer on the market, or, with limited exceptions, Horaeus claimed, excuse me, Eskim claimed that their trade secrets and know-how were in the documents, but those provisions have been redacted. And so there's, when you look at the record, you have all of this evidence showing that they have a confidentiality interest. In these circumstances. Well, the district court certainly believed that Biomet and Eskim were not, in fact, deliberately interfering with your efforts to use the cited documents in the enforcement proceedings. Let me tell you my bottom line worry, Mr. Rosenberg. My bottom line worry is that it's very hard for me to avoid the inference that Horaeus is trying to resolve the disputes in foreign courts by obtaining a ruling in its favor here in the United States, here in our court. And yeah. Well, I assure you that's not what Horaeus is doing. But when you look back at the purposes of 1782, one of the reasons that documents should be provided from the US is so that you don't have a party that has to go to 30 different jurisdictions around the world to get information that's located in one jurisdiction. And likewise, under the federal rules of evidence, the district court has the ability to control the discovery in its courtroom. Ball Memorial Hospital, from this court, makes that perfectly clear. And there are plenty of garden variety cases where district courts prevent documents produced in discovery from being disclosed publicly. For example, in employment cases, personnel files are produced all the time from employers, and judges often implement protective orders that say none of the information in the personnel file will be publicly disclosed or misused by either party. You don't need to resolve a foreign case to get to that. And my point about that, there really is no reason this court needs to get into the substantive trade secret determination when you look at simply the record in this case. A record where Horaeus has amply justified its confidentiality interest versus a record where Biomed and ESKEM have shown no confidentiality interest. That's really the key issue here. And so I don't think, I understand the court's concern, but I don't think it's dispositive here because this is a case where you have a particular record. Now it's true, Judge Miller didn't make a finding that Biomed deliberately impeded this, but I don't think such a finding is necessary. What happened is undisputed, right? The delays are undisputed. And in light of those delays, this system is, as Judge Miller said, broke. And so given that, we need a fix. And the fix here is to stop Biomed from having a unilateral veto. I want to give you an example. It's not in the record. This just happened a few weeks ago, I understand, in France. If it's not in the record, should you be arguing it? Well, it just happened. As an officer of the court, I'm telling you this is a fact that just happened. But I just want to use it as an example. German counsel is here and told us this last night, that in France, which is a country that wasn't at issue here, but is going to be at issue in the future on these concerns, Horaeus filed a claim with Biomed and delivered it to Biomed's facility. Biomed is now arguing, apparently in France, that by delivering a claim that included confidential information, stamped confidential all over it, Horaeus has now relinquished its trade secrets by, quote, publicly disclosing the document by filing it on Biomed's facility. I mean, so yes, there's not a finding in the record of intentional obstruction. But the point is there are these delays. And in light of these delays, whether intentional or not, there needs to be, in our view, a remedy here. And it's a very simple. We're not asking for a wholesale modification of anything. We're just asking for these nine documents, allow Horaeus to submit them without a veto by Biomed and prevent them from public disclosure. Biomed has refused, Your Honor, and this is in the record, all of the declarations that are cited and included in the record say that in multiple jurisdictions, Biomed has refused in its negotiations with Horaeus to agree that it will not publicly disclose the documents. And they're the ones who initially claimed them as confidential here in the United States. That's undisputed. That's in the record. Biomed has not disputed this, I don't believe. But even if they have, it's clearly in the record that they have refused to agree not to publicly disclose the documents. Their position has been no restrictions on Biomed whatsoever. And that has made it impossible to move these cases forward in the foreign jurisdictions. That's the critical problem. I understand the court's concern. I cannot emphasize enough, the court does not need to make a trade secret ruling in this case. All the court needs to do is weigh the evidence in the record and determine that Horaeus has amply shown its confidentiality interest, Biomed has not. And under the applicable case law, that directly supports the limited modifications that Horaeus is seeking. Why didn't you appeal the earlier records? So the reason we didn't, Your Honor, is that first of all, in the prior appeal in this case, this court specifically said that there's only finality for appeal in a 1782 case when there are no further contemplated proceedings in the district court. In the first order in 2015, Judge Miller granted some of the relief that we sought and then directed the parties to work on a new protective order that implemented his opinion. There was clearly additional proceedings going on in the district court. And then with respect to the January 2017 order, the court said, look, under paragraph five of the protective order, I'm not granting you relief. But I think you should avail yourselves of paragraph six of the protective order and seek the relief that way. And so we did exactly that. And then in the third order, Judge Miller denied relief under the sixth paragraph of the protective order. And so in each of the first two instances, there were proceedings not just contemplated, but ongoing in the district court. And we didn't believe that they were appealable at that time. And moreover, appealing each of those decisions would just have led to piecemeal appeals, piecemeal litigation, where now we have a final order that includes these issues. I see my time is, oh, I'm sorry. You're not arguing that the German court found that the documents belonged to Horaeus, are you? I'm sorry, I missed the first part of that question. You're not arguing that the German court found that the documents belonged to Horaeus, rather than to buy and sell them? The only thing the German court found was that information in the documents were Horaeus' trade secrets. And what we're saying is... Is there a yes or no answer to my question? I don't think we're arguing that the German court... I think that's a difficult question because of the wording. I think that the German court was not asked, do these documents belong to Horaeus or Biomet? And what the German court ruled was that information in these documents was Horaeus' information. So I'm not saying that there is a finding out there that this court has to adopt about the ownership of the documents. What I'm saying is that it's a prima facie matter. The German court's ruling shows that Horaeus has a very substantial confidentiality interest in these documents. Okay, I see my time is up. Try to reserve whatever I have left for a follow-up. I'm sorry, Judge Rover, you have another question? No, let him sit down. Thank you, Your Honor. All right. Thank you, Mr. Rosenberg. Thank you. Mr. Kornack? Counsel, may it please the court. I'd like to begin by raising three overarching points. The first one is that the underlying action is a discreet proceeding brought pursuant to 28 United States Code 1782, which Horaeus used to attempt to obtain discovery, originally for use in a particular German proceeding, and then subsequently for use in nine proceedings pending overseas. There are absolutely no substantive merit-based claims pending in the court below. Instead, all of Horaeus' merit-based trade secret claims are being vigorously litigated in those nine overseas actions, and in a lawsuit that Horaeus filed against ESKEM in the United States District Court for the Eastern District of Pennsylvania, and in a lawsuit that Horaeus just filed in December 2017 against BioMet, Inc., in that very same court. Secondly, it is irrefutable that BioMet has not objected. What's the difference between, forgive me, but what's the difference between the case here and the two cases in Pennsylvania? I'm sorry, Your Honor. When you say the case here, are you referring to the case that Horaeus filed against ESKEM or the case that Horaeus just filed against BioMet? God Almighty. Indeed. I don't know what I'm referring to at this point. Well, let me try to explain and give a general answer to your question. If you step back and look at what's really at issue in these cases, Horaeus is sued in, if you exclude Germany for now, has filed lawsuits against BioMet, Inc. and or various BioMet related entities in nine European countries. It has also sued ESKEM in the Eastern District of Pennsylvania and BioMet in that same court. The gravamen of all these cases is that BioMet allegedly used Horaeus's purported trade secrets for the development of bone cements, including the development of the copolymers, and then either directly used or did a wink, wink, nod, nod, using that information to guide ESKEM in its development of the copolymers that were then used to make the bone cements at issue. So while the claims are proceeding under the local laws of each jurisdiction, that's the factual basis essentially for the lawsuits. If that answers your question, Your Honor. The second point I'd like to make, God, did you have a question? Is the same issue that we are arguing today going to come up in Pennsylvania? I believe it very likely will, and here's why. If you look at the relief that Horaeus sought in its third motion to modify, and as we said in our briefs, and I may get a chance to talk about today, we believe that is the only order properly before this court because of jurisdictional problems where Horaeus either waived issues or didn't file a timely notice of appeal. And that third motion sought extremely narrow relief. It sought to impose restrictions on BioMet's use of its own business documents, documents that existed before any of this litigation began and which contained BioMet's own confidential information. And that relief, if the court looks at Horaeus' third motion, the actual motion and the letters that were attached as exhibits, where counsel specifically explained that one of the reasons that the restrictions on BioMet's use are necessary is because Horaeus is concerned it is going to use that information to develop new bone cements. And I remember in the court below explaining to Judge Miller that you can't get more substantive than that. That is essentially an affirmative injunction attempting to prevent BioMet's use of its own documents. It's the exact type of relief you would expect to see in any trade secret case. And to answer your question, Your Honor, in the case that Horaeus filed against ESCM, in the case that Horaeus filed against BioMet pending in the United States, there are claims for monetary damages and injunctive relief. Horaeus has also sought injunctive relief in the overseas proceedings. And this is what led Judge Miller, I believe, to have great concern about the relief Horaeus was requesting. As he mentioned in his opinion, had he granted the motion, it would have effectively mooted an appeal BioMet had pending in Belgium and would have interfered with a decision the Norwegian court was going to make on this issue of confidentiality and how the documents should be treated. And this substantive relief that Horaeus is trying to get this court to approve of is, as you said, Judge, it's a way to use 1782 as a backdoor to get substantive rulings. If Horaeus believes it's entitled to injunctive relief against BioMet, a BioMet-related entity, ESCM, it has the right to go to those nine foreign courts, to go to the Eastern District of Pennsylvania and ask for such relief. They may not get it, but they can ask. And those courts where there are actual merits claims pending can review those claims and then based on a full and proper record render a decision. But I respectfully submit it would be completely improper to do so in the context of a 1782 proceeding because there are no underlying merits claims. The parties aren't litigating the issue of a trade secret. There's been no evidence presented to the district court. This is a mere discovery action. So again, if Horaeus wants to argue these points, it can do so in the cases where there are substantive claims pending. And turning back to the point I was making, that it is irrefutable that in the nine foreign jurisdictions, BioMet has not objected. And I want to be crystal clear about this. BioMet has not objected to Horaeus' use of the cited documents in those proceedings, provided that the very limited confidentiality safeguards to which Horaeus itself agreed are in place. BioMet submitted detailed declarations, pleadings from the foreign courts in response to Horaeus' second motion to compel. Outlining all of what was going on in the foreign courts and explaining that the dispute, the delays, et cetera, that counsel brought up have nothing to do with BioMet interfering with their attempts to use the cited documents. And I suppose I will have to ask your friend whether the same is true of Eskim. I'm sorry? Your Honor, well, Eskim isn't involved in the foreign litigation. So I'm sure you can ask Ms. Platt, but because Eskim isn't involved, I don't know if they have a position on use overseas. But with respect to BioMet, we have never objected. And Judge Miller, looking at this wealth of evidence, declarations, foreign pleadings, came to the conclusion that BioMet and Eskim, to the extent it could do so, isn't interfering with the use of those documents. And as you pointed, Your Honor, there's been, I would say, not even a legitimate attempt to show how that was clear error. Now, counsel may disagree with the decision, but as the appellant, the obligation is to not only show the court that the decision was wrong, but that it was clear error, and that's a high burden. And I would submit it didn't even come close to meeting that burden here. If I could, I'd like to turn to the question of what issue, or I'm sorry, what order is properly before the court? Because I think this is a very important issue. Counsel's argument, and certainly to a much greater extent, a Horaeus' brief, is based on the premise that the district court's ruling on Horaeus' first, second, and third motions to modify the protective order are on appeal. That's incorrect. The only order that is properly before this court is the district court's ruling on the third motion to modify. Let's turn for a second to the first. Doesn't that move the concerns about the first two motions? I'm sorry? The third motion pretty much encompasses everything the first two, right? I would disagree with that, Your Honor, and let me explain why. And this is why I wanted to bring this up. If you look at the third motion, again, if you look at the motion, the letters, and particularly the hearing transcript, the third motion was far narrower. Horaeus limited the type of relief it was seeking, and it limited the basis for that relief. And here's what I mean. Specifically, in the third motion, the only relief Horaeus sought, substantive relief, was for the court to impose restrictions on Biomet's use of its own business documents. In the third motion, and again, look at the hearing transcripts, the motions, the letters, Horaeus was not seeking, as it did in the first motion and the second motion, to exclude the cited documents from the protective orders wholesale. And it no longer was relying on any type of argument that this is Horaeus's confidential information. Horaeus owns the information. The only relief sought, again, was to impose restrictions on Biomet. And equally as important, if not more important, was the basis for the third motion. It was limited to Horaeus's argument that in the less than one month period of time before the court's ruling on the second motion and the time when Horaeus filed its third motion, there were changed circumstances that would warrant good cause for modifying the protective order. And if you look at the articulated changed circumstances, it referred to the situation in Belgium and Norway. Specifically, Horaeus argued that the appeal in Belgium was still pending and causing delays. Well, that appeal was present when Horaeus filed his second motion and was briefed and argued as part of the second motion. With respect to Norway, again, in the second motion, Horaeus raised its complaints about Biomet not agreeing to restrictions on the use of its own documents. So that, too, was litigated in the second motion. And Judge Miller looked at this and said, Sure. But the fact that they didn't appeal, doesn't that enter into your argument? I couldn't agree more, Your Honor. I was responding to the question of whether the third motion encompasses all the prior issues. And because it was raising much narrower relief and much narrower bases, I believe the answer to that question is no. And to answer your question, the fact that you don't file a timely notice of appeal, in my opinion, that should be game over with respect to the first and second motions. They didn't come close to filing a timely notice of appeal. And they could have, because this is all taking place in the context of a 1782 motion. And in the 1782 context, Horaeus had the right to file an immediate appeal from both orders. It just chose not to do so. And with respect to the first motion, I think it's interesting to point out, rather than appealing, and had they appealed the first motion, all these issues would have been before the court and could have been resolved way back then. But instead of doing so, they negotiated, agreed to, and asked the district court to enter the Eighth Amendment of Protective Order, which contains the very same provisions about which it complained previously. Specifically, in its first motion, Horaeus wanted to exclude the nine cited documents wholesale. Well, in the Eighth Amendment of Protective Order, they agreed to restrictions on their use of the cited documents. In their first motion, Horaeus wanted to impose restrictions on BioMet's use of the cited documents. In the Eighth Amendment of Protective Order, it reaffirms that there are no restrictions on BioMet's use of its own documents. So you have a situation where, besides not filing a timely notice of appeal, I would submit that by entering voluntarily into the Eighth Amendment of Protective Order, Horaeus has waived any right to complain about these issues. It had a chance to appeal, it chose not to, and they can't raise these issues now. It raises an issue of fairness also, because rather than appealing, Horaeus engaged in negotiations with BioMet and SCAM, where BioMet and SCAM gave up certain positions in order to foster what would be a workable compromise. So to now allow Horaeus, so many months later, to try to rewind the clock and raise arguments and issues that they've abandoned, and which form part of the negotiations, isn't fair. I see I'm running out of time, and all I would say is, I respectfully submit, given the standard of review here, abuse of discretion, that Horaeus has not come close to clearing that high bar of showing an abuse of discretion. Horaeus is able to use the cited documents, BioMet and SCAM receive protections for their confidential information. The protective orders are working. Thank you, Your Honor. Thank you, Mr. Kline. Ms. Platt. Good morning, Your Honors. May it please the Court, I'm Mary Platt. I represent SCAM, a family-owned specialty chemical company located outside of Philadelphia that developed and sells copolymers to BioMet for use in BioMet's bone cement. There is some overlap between the cases here and the case in the Eastern District of Pennsylvania. In 2009, Horaeus sought documents from SCAM pursuant to a 1782 subpoena issued by the Eastern District of Pennsylvania. SCAM produced many of the documents that BioMet produced in its 1782 proceeding here, including one of the cited documents and portions of two other of the cited documents subject to a protective order in the Eastern District of Pennsylvania case. SCAM then intervened in this case because it was concerned that information that belonged to SCAM in the BioMet documents would be used in Europe where SCAM was not a party and has never been a party to any of the litigation in which Horaeus has filed against BioMet. Three years after SCAM intervened here, Horaeus sued SCAM for alleged trade secret misappropriation in Pennsylvania. And SCAM produced five of the cited documents from its files. And BioMet produced all of the cited documents and many more in the Eastern District of Pennsylvania subject to a protective order in that case. That protective order, like the one in this case, allows the producing party to use their own documents without restrictions. And Horaeus has never asked to use any of the documents that were produced by SCAM in the 1782 case or in the misappropriation case that was filed later in Europe. They have only sought to use documents that are, although the documents, some of them are the same, it is only sought to use documents that have BioMet's bait stamp on them as opposed to the SCAM or BioMet bait stamp that was put on in the Eastern District of Pennsylvania. So the document, so the focus of Horaeus's attempts to use these documents in Europe has always been in this, in the Northern District of Indianaport. And as Mr. Kornick said, the only decision that can be considered in this appeal is the March 1st, 2017 order. Each of the court's decision expressly denies Horaeus's motions. They were not tentative, informal, or incomplete orders, which the Supreme Court in Cohen said would render a decision not final. And the issue here is really, as Mr. Kornick said, whether there should be restrictions placed on BioMet's use of its own documents. The Horaeus's notice of changed circumstances only referred to that as their requested relief. In fact, there was a letter that prompt, that led to the notice of changed circumstances that Mr. Rosenberg sent to Mr. Kornick and myself that said they were not concerned at all about changing the restrictions on SCAM that were in the protective order. They were only concerned about changing the restrictions on BioMet. For this reason, the court did not even consider the other requests that Horaeus asked this court to consider on appeal, namely to exclude the cited documents from the protective order, to allow Horaeus unfettered discretion to use the cited documents in the European proceedings, and to impose restrictions on SCAM. Those three things were not part of the notice of changed circumstances. Horaeus has also alleged that... Yes, Your Honor. I don't know if I should be asking you any questions about, well, about the German court. I don't know. Do you have a view of where Horaeus should be, in what court, to deal with this issue? Your Honor, I'm just as happy that it's here and not in the Eastern District of Pennsylvania. At least it's in one court as opposed to multiple courts right now. But, and they, like I said, they're really seeking here to impose restrictions on BioMet only. And so it has really nothing to do with SCAM's use of the documents, either in the Eastern, from the Eastern District of Pennsylvania case, or BioMet's use of SCAM documents in Europe. BioMet is restricted under the protective orders in the Eastern District of Pennsylvania from using any documents that were produced by SCAM in the 1782 proceeding, or that were produced in the SCAM trade secret misappropriation case. The protective orders say that this cannot be used. It really is a complicated mess. Well, I... Is that a bitter laugh, or? I am running out of time. I just want to say that SCAM did identify in its memorandum opposing Horaeus' second motion, the documents that, five of the nine documents which contain confidential communications between SCAM and BioMet, and also five documents, or four documents that relate to SCAM's processes and equipment, that those things are confidential to SCAM. And SCAM's still making these copolymers. So it remains important to SCAM to keep information regarding its processes, know-how, and equipment confidential from its competitors. And so SCAM respectfully requests that the court limit its consideration of this appeal to the March 1st, 2017 decision, and the restrictions that the court refused to place on BioMet, and affirm that decision. Okay. Thank you, Ms. Clark. Thank you, Your Honor. Mr. Rosenberg. May it please the court. What I think is most remarkable is not what my opponents said, but what they didn't say. Number one, neither of them mentioned a single declaration or piece of evidence in the record supporting their confidentiality arguments. The thing Ms. Platt referred to is a three-sentence general statement in a brief without any citation. The second thing is, Mr. Kornack said that BioMet never opposed allowing the cited documents in provided the restrictions of the protective order were in place. What he didn't do was refute my argument that every time this came up in jurisdictions where there were no confidentiality regimes, and they had to negotiate this anew, that BioMet would not agree not to publicly disclose the documents. That was a huge sticking point. And so, in these negotiations, at every turn, Horea said, well, we have to have a regime, and you guys have to agree that when we submit these documents to this court, that doesn't allow you to say we've publicly disclosed them, or allow you to publicly disclose them. And they said, no. No restrictions on BioMet are acceptable, and that's where the impasse was created. That's where the delay was created. This is undisputed. The only finding at issue that Judge Miller said is he didn't think it was a deliberate attempt to impede the proceedings. It doesn't matter. As a matter of law, that delay, that veto, the way it's played out is a changed circumstance. Changed circumstances is a quasi- I'm sorry, Your Honor. What did you say? Judge Miller said a lot more than what you're giving him credit for. Judge Miller said, among other things, among other things, that the burden was on Horeas to show that the modifications were appropriate and necessary, that Horeas had not shown that BioMet and Eskim were, in fact, deliberately dragging their feet in the enforcement proceedings, as to the confidentiality provisions, that it was doubtful whether the court had the authority to restrict the rights of BioMet and Eskim, as to the documents they themselves had produced, and that Horeas had generally not shown that it was entitled to modification of the confidentiality provisions governing the cited documents. And he said more, but I can't remember, you know, a lot of this. Yeah. Your Honor, everything he said boils down to three legal errors. He improperly shifted the burden. Baxter should have been the test that applied. He didn't talk about Paragraph 11 at all of the protective order, which is critical to his four-factor determination, and he simply made a legal error in saying that everything that happened didn't constitute a changed circumstance. I understand there's some underlying factual rulings there, but our position is the ultimate determination on changed circumstance is at least a mixed question of fact and law, and he got that wrong, given everything that's in these declarations, and given that it's undisputed that BioMet would not agree in these foreign jurisdictions that it would not publicly disclose the documents. That is a critical piece of this that really is undisputed. I see my time is out. If I could just have one minute maybe to cover. You may have an additional minute. Okay. Thank you, Your Honor. I wanted to talk just for a second about jurisdiction. There is no question that in that third order, we renewed our prior motion, and when you look at Judge Miller's order, he spends two pages discussing our motion to modify the protective order. There's no question it all is encompassed in the third protective order. You know, in other words, your view is that you can simply not appeal orders and then bring up the very same issues again in a third motion before a court, and a court has to revisit what was not appealed by you? No. That's not our position, Your Honor. Our position is that in each of the two earlier orders, there were still proceedings ongoing in the district court. 1782 is a unique animal, right? It's only a discovery proceeding, and so you can only appeal when all the proceedings in the district court are concluded. As this court has said, as other courts have said, there's no finality when there are still proceedings ongoing, and in each, after the first order and after the second order, we were directed to engage in proceedings. So we don't think we could have appealed, but even if we could, it was sort of akin to a discretionary interlocutory appeal like on a qualified immunity decision or class certification that isn't waived if you don't raise it immediately. The final ruling is the ruling we have here. Just one or two quick additional points. Ultimately, this boils down to, you said, Your Honor, that this is a mess. I agree, overall, all these cases are a bit of a mess, but this court should clean up one critical part of that mess, which is that this protective order isn't working. We're asking for a very limited modification, and Biomet and ESCM haven't justified opposing that modification. The district court was concerned about a lot of things. I don't gainsay his concerns. The problem was the district court didn't apply the right standard, didn't look at the actual provisions like paragraph 11 of the protective order that allow us to maintain this challenge, and didn't give the appropriate legal significance to what was in the record, that there were changed circumstances, and that this limited modification was necessary. For Gray's to be able to pursue its rights in all of these jurisdictions, it's just essential that this court fix this particular problem. Let me just, if I may ask you, one area that gives me some pause, Mr. Rosenberg. You have said that Horaeus' claim that Biomet was using the order to obstruct the proceedings specifically in Belgium and Norway. But the district court has an actual finding that says the evidence before it doesn't show that Biomet used the terms of the amended protective order to obstruct the proceedings here. Right. And he cites the record. Right. You know, that's his finding. And what would you, how do you respond to that? My response is, well, I think that finding is clearly erroneous, and the court could so find. I think more importantly, the legal ruling of whether there's a changed circumstance doesn't depend on this finding that it wasn't intentionally obstructing. The point is, the protective order and the way it was being used wasn't working and wasn't allowing these proceedings to proceed. And I think that's the critical factor. Whether it was intent, I mean, I read that finding as saying only that it wasn't an intentional obstruction. Not, I think the court lays out, for example, I think it's page two of the supplemental appendix where the court recounts the delays, and the delays are undisputed. And that's the, the problem is that delay, as a matter of law, should have compelled the court to modify the protective orders. Okay. Thank you very much. Thank you, Mr. O'Leary. Thanks to all counsel. And thank you, Your Honor. The case is taken under advisement, and the court will proceed to the.